# EXHIBIT "D"



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Stephen and Michele  :  CIVIL ACTION
McKean,
 :
 :
Plaintiffs,  :
 :  NO:   3:12-cv-01206-RDM
-vs-  :
 :
Nationwide  :
Insurance Company
 :
Defendant.  :
_____  :

- - -

Wednesday, July 17, 2013
Dunmore, Pennsylvania
- - -

Oral Deposition of RUSSEL ANDRESS held at the
Pennsylvania State Police Headquarters, 85
Keystone Industrial Park, Dunmore Pennsylvania
commencing at approximately 9:50 a.m. on the
above date, before Barbara Kaiser,
Professional Court Reporter and Notary Public.

- - -

LOVE COURT REPORTING, INC.
1500 Market Street
12th Floor East Tower
Philadelphia, Pennsylvania 19102
(215)568-5599

- - -

2

```
 1   A P P E A R A N C E S :

 2   SHERMAN SILVERSTEIN, KOHL, ROSE & PODOLSKY
     BY:   ALAN C. MILSTEIN, ESQ.
 3   308 Harper Drive, Suite 200
     Moorestown, NJ  08057
 4   (856)661-2085
     amilstein@shermansilverstein.com
 5   Representing the Plaintiff

 6

 7   DICKIE, MCCAMEY & CHILCOTE, P.C.
     BY:   CHARLES HADDICK, JR., ESQ.
 8   Plaza 21, Suite 302
     425 North 21st Street
 9   Camp Hill, PA 17011
     (717)731-4800
10   chaddick@dmclaw.com
     Representing the Defendants
11

12
     A L S O   P R E S E N T :
13
     Stephen McKean
14   Jeffrey P. Resnick, Esq.

15

16

17

18

19

20

21

22

23

24
```

1            Troop R consists of Lackawanna
2    County, Wayne County, Pike County and
3    Susquehanna County.
4        Q.    So, before you became a deputy fire
5    marshall, what experience did you have
6    investigating fires?
7        A.    None.
8        Q.    And you have no engineering degree?
9        A.    No.
10       Q.    You never studied engineering?
11       A.    No.
12       Q.    You have no electrical degree?
13   That is, you're not an electrician?  You have
14   no license in being an electrician?
15       A.    That's correct; I am not an
16   electrician.
17       Q.    Have you ever taken courses in
18   electronics?
19       A.    Yes.
20       Q.    And in what capacity was that?
21       A.    Through my continuing education in
22   the fire marshall unit, I had -- let's see --
23   if you can give me a second here -- I attended
24   a class in electrical aspects in fire

 1   investigation by the ATF in 2010.

 2          I took Electrical Fire

 3   Investigation --

 4      Q.   Well, how long was that class?

 5      A.   I'm not sure.

 6      Q.   A couple of hours?

 7      A.   That might have been -- one of them

 8   was a one-week course -- a lot of seminars and

 9   that type of training.

10      Q.   Was it a one-week course on

11   electrical both and fire?

12      A.   Yes.

13      Q.   Just electrical?

14      A.   Just electrical.

15      Q.   Is that your CV there (indicating)?

16      A.   Well, a portion of it, yeah.

17   That's training.

18      Q.   Can we get a copy of that?

19      A.   You sure can; do you want to take a

20   look at it (handing)?

21          MR. MILSTEIN:   Let's mark this

22      as Andress Exhibit 1.

23          Can we have this one

24      (indicating)?

```
 1              THE WITNESS:  Sure.  Sure.
 2              (At this time, Andress Deposition
 3              Exhibit No. 1 was marked for
 4              identification.)
 5              MR. MILSTEIN:  Let's mark the
 6         "Expert Testimony" sheets as Andress
 7         Exhibit 2.
 8              (At this time, Andress Deposition
 9              Exhibit No. 2 was marked for
10              identification.)
11    BY MR. MILSTEIN:
12         Q.   So your first course in electrical
13    causes of fire was 2010?
14         A.   That was strictly dealing with
15    electrical causes of fires; right.  The basic
16    fire investigation course covers all manner of
17    causation factors for fire investigation, as
18    well as the advanced arson investigation
19    course.
20              The arson investigation course at
21    the National Fire Academy -- they all cover the
22    basics of electrical fire investigation which
23    we need to look for.
24         Q.   But you don't hold yourself out as
```

Russel Andress - July 17, 2013                    12

1    an expert in electrical --

2         A.    Absolutely not, no.

3         Q.    You never -- have you ever been a

4    fireman?

5         A.    Never been a fireman.

6         Q.    Have you ever fought a fire?

7         A.    Never fought a fire.

8         Q.    I take it you have been at scenes

9    of fires while they were ongoing?

10        A.    Absolutely, yes.

11        Q.    So, today, you're deputy fire

12   marshall; correct?

13        A.    Yes, there is only one fire

14   marshall for the state in Harrisburg and that's

15   Corporal Nolan Brewbaker.

16        Q.    So how long have you been deputy

17   fire marshall?

18        A.    March of 1999.

19        Q.    So, let's talk about the fire at

20   803 Raymondskill Road in Milford, Pennsylvania

21   on September 22nd of 2011.

22             Are you familiar with that fire?

23        A.    I am.

24        Q.    When is the first time you were at

```
 1          objection to the form of the
 2          question is ask about the time frame
 3          of when he suspected what.
 4   BY MR. MILSTEIN:
 5          Q.    The fire in 1999 -- you suspected
 6   at the time it was a fire of incendiary origin;
 7   correct?
 8          A.    Yes.
 9          Q.    That was your conclusion; right?
10          A.    No.
11          Q.    But you suspected it was a fire of
12   incendiary origin?
13          A.    I suspected it was.  It was not my
14   conclusion.  My conclusion was that it was a
15   fire of undetermined origin.
16          Q.    But you thought it was a fire of
17   incendiary origin?
18          A.    What I think and what I can prove
19   are two different things.
20          Q.    Obviously.
21                When you got the call in 2011 on
22   this fire, you knew it was in a house that you
23   had previously suspected was a residence that
24   was intentionally set on fire?
```

```
 1        A.      Yes.
 2                Thank you for clarification on that
 3   question.
 4        Q.      You got it.  No problem.
 5                With respect to the cell phone
 6   records that you got and the GPS, did it
 7   determine that Mr. McKean was at the residence
 8   between 4:30 and 7:14?
 9        A.      No.  What ends up happening in that
10   rural area, most of the towers you hit off of
11   are in New Jersey so you can't -- it's not
12   detailed enough information to --
13        Q.      But that's what you were trying to
14   find out?  He said he left at 4:30 and came
15   back at 7:14; right?
16        A.      Ye.
17        Q.      And you were trying to find out if
18   he was, in fact, at the residence between 4:30
19   and 7:14?
20        A.      I was trying to determine where he
21   is, if anywhere, at the time; who he called;
22   whether he texted anyone; whether anyone called
23   him -- back all of those things.
24        Q.      And, in all of the investigations
```