# EXHIBIT "F"



```
THOMAS JONES                                                                    FAX
(570) 629-6082         H.J.H. INVESTIGATIONS                           (570) 629-6082
```



P.O. Box 5
Reeders, PA 18352

Mr. Marc Jackson
Nationwide Insurance

10/10/11

RE: Claim #5837HP010364

9/24/11

    On this date I examined the fire scene at 803 Raymondskill Road. Present during the examination was the insured Stephen McKean. The structure involved is a two story wood frame home. The exterior is wood sided and the roof is shingle. The right side faces a northerly direction.

    Electricity to the home is provided via an underground feed to a meter base at the front of the home. In the basement there is a Square D electrical distribution panel. There is no sign of any unusual electrical activity.

    The main heat source is a Burnham oil furnace. The main floor is heated. There is no sign of any malfunction to the furnace.

    The insured advised that he built the home and is the original occupant. He lives there with his wife Michele. There are no smokers in the home. On the day of the fire he left at 6:00 AM to go to work at his office in Milford. He came home during the day and called in a prescription to Rite Aid. He then went back into town. At about 4:00 PM he came back home and tied the dogs outside by the rear porch. Then he went back to Rite Aid and his prescription was not ready. He then went to Wal Mart and then Dunkin Donuts. Then he went back to Rite Aid. He then went to his office to draw up some contracts. His wife called and said she would meet him at the office then they would go to Joeys Pizza. It was raining so he went back home to put the dogs in the house. He drove in the drive opened the front door and everything was black. He went around the back got the dogs and put them in the run. He couldn't see what was on fire and opened the back door and then the kitchen door. He got on his knees and crawled on the floor and could see the two couches on fire. He advised that there are no dead bolts in the kitchen or the garage. He does have an alarm system but no central monitoring. The alarm is for burglar, fire and carbon monoxide. There are 13 doors in the house. The ceiling light and fan above the couch would have been on. His step son had some problems about 2 months ago with some Puerto Ricans in Port Jervis and took them to court. He advised that he did not set the fire and that he doesn't have problems with anyone.

My examination shows no forcible entry into the home. There are heavy carbon deposits in the entire home indicating a slower type of smoldering fire. In the kitchen on the table there are papers on the table that were set on fire. On the kitchen floor along the north wall there is an origin on the floor with combustible materials. In the living room there is a point of origin on the front couch, the middle couch and a chair along the rear. Between the two couches there is a distance of 36 inches. Between the couch and the chair the distance is 16 inches. There is lesser damage on the chair side adjacent to the couch. The most severe damage to the chair is on the seat area.

On the middle couch the ceiling light/fan had fallen. The fan was examined and there is no sign of any malfunction or unusual electrical activity.

State Police Fire Marshal Tpr. Russ Andress was contacted via telephone. He advised that he found multiple points of origin in the home and has ruled the fire incendiary and Arson. His investigation is continuing.

In conclusion based upon a reasonable degree of fire investigative certainty it is my opinion that this fire was Arson and incendiary in nature. There are 5 distinct and separate points of origin. There is no communication between the 5 points of origin found.

This fire is Arson.

Submitted by,

Thomas Jones
Certified fire Investigator

# *EXHIBIT G*



Plick and Associates, Forensic Engineers

December 27, 2013

Charles E. Haddick, Jr., Esq.
Dickie, McCamey & Chilcote, P.C.
Plaza 21, Suite 302
425 North 21st Street
Camp Hill, PA 17011

                Re:    Stephen and Michelle McKean
                      803 Raymondskill Road
                      Milford, PA 18337
                      Residential Fire
                      Date of Loss: September 22, 2011
                      Nationwide Claim No.: 5837HP01036409221101
                      Our File No.: 8125

**BACKGROUND**

Stephen McKean is the owner and occupant of a single-family, two-story, residential dwelling located at 803 Raymondskill Road, Milford, PA 18337. On September 22, 2011 a fire erupted on the first floor of the subject house. An origin and cause investigation of the fire was conducted by Thomas Jones, C.F.I., H.J.H. Investigations, P.O. Box 5, Reeders, PA 18352 (570) 629-6062.

A fan/light had fallen from the ceiling onto a couch in the living room. Plick and Associates, Forensic Engineers was requested to conduct an electrical engineering inspection of the subject fan/light to determine its involvement in the cause of the fire.

**INVESTIGATION**

On December 29, 2011, I inspected the subject fan/light at Damage Control, 342 Main Street, Eynon, PA 18402 (570) 341-1500. Christopher Hamer, Field Supervisor, of Damage Control granted access to the premises. My inspection was limited to a visual, non-destructive examination. No dismantling of the fan/light was performed.

Forensic Engineering  •  Fire Investigation  •  Expert Witness

221 Woodbine Avenue, Narberth, PA 19072   610.747.0675   fax 610.747.0677
www.plickandassociates.com    experts@plickandassociates.com

## Plick and Associates, Forensic Engineers

Charles E. Haddick, Jr., Esq.
Stephen and Michelle McKean
December 27, 2013
Page 2 of 6

On December 10, 2012, I participated in a joint examination of the subject fan/light at the subject house with the following individuals:

- Daryl L. Ebersole, P.E., C.F.E.I., Robson Forensic, 354 North Prince Street, Lancaster, PA 17603 (800) 813-6736
- Joseph E. Myers, Sr., C.F.I., C.F.E.I, P.O. Box 861, Otisville, NY 10963 (845) 386-3339
- Joseph E. Myers, Jr., P.O. Box 861, Otisville, NY 10963 (845) 386-3339
- Thomas Jones, C.F.I., H.J.H. Investigations, P.O. Box 5, Reeders, PA 18352 (570) 629-6062

In the course of my investigation, and in the preparation of this report, I reviewed the following reports:

1. Report by Daryl L. Ebersole, P.E., C.F.E.I.., Robson Forensic, dated January 28, 2013
2. Report by Joseph E. Myers, Sr., C.F.I., C.F.E.I., dated February 8, 2013
3. Supplemental Report by Daryl Ebersole, P.E., C.F.E.I., Robson Forensic, dated November 29, 2013

**DATA AND OBSERVATIONS**

The subject fan/light (Photo 1) is approximately 24 inches high with four lamp holders (Photos 2 & 3) below the fan blades. The dimension between opposite lamp holders is approximately 20 inches.

The circular wire cages, seen in photograph 4, are part of the lamp holders. There is melted metal and solidification in the lamp holders as typified in photograph 5. There had been

## Plick and Associates, Forensic Engineers

Charles E. Haddick, Jr., Esq.
Stephen and Michelle McKean
December 27, 2013
Page 3 of 6

decorative figures above the lamp holders (Photo 6). Photograph 7 shows the subject fan/light reconstructed.

The switch housing was disassembled (Photo 8) revealing the melting and solidification of melted metal. The motor housing was disassembled revealing the motor's windings (Photos 9 & 10). There is minimum melting on some of the copper windings. The metallic internal components of the motor are neither damaged nor distorted.

There is no evidence of electrical arcing or abnormal electrical activity (i.e., short circuit) on the housing of the motor (Photos 11 & 12).

### DISCUSSION

The subject fan/light was suspended from the ceiling above a couch. There is no evidence of any electrical arcing or abnormal electrical activity on the motor housing. The lack of any electrical arcing or abnormal electrical activity on the motor housing indicates that there was not a high temperature present on the motor housing. In addition, the motor housing was not in contact or close proximity to any combustible materials. The minimum melting of the fine copper windings of the motor is the result of the motor being attacked by a fire already in progress.

National Fire Protection Association (NFPA) cites in publication NFPA 921 Fire and Explosion Investigations, Chapter 5, Basic Fire Science, Section 5.1 Introduction, that for combustion (i.e., fire) four components are necessary. They are heat (i.e., ignition source), fuel, an oxidizing agent (i.e., usually the oxygen in air) and an uninhibited chemical reaction (i.e., the actual burning of a fuel producing heat, light and a variety of chemical by-products).

## Plick and Associates, Forensic Engineers

Charles E. Haddick, Jr., Esq.
Stephen and Michelle McKean
December 27, 2013
Page 4 of 6

It also states fires can be prevented by removing one or more of the aforementioned components.

The absence of any electrical arcing or abnormal electrical activity on the motor housing eliminates the motor as an ignition source. The motor housing, not being in contact or close proximity to combustible materials, substantiates there was no fuel for the motor housing to ignite. The absence of heat and a fuel necessary for fires eliminates the motor as the cause of the subject fire. The absence of a fire eliminates a third component, the uninhibited chemical reaction.

The minimum melting on the copper windings of the motor, and the melted metal and solidification of the metal in the switch housing and the lamp holders is consistent with the fan/light falling on, and getting engulfed by the burning couch.

Mr. Ebersole, in his report dated January 28, 2013 under "FINDINGS" states:
   *"1. The fan/light above the living room could not be ruled out as a cause of the fire.*
   *2. The cause of this fire is underdetermined."*

Under "ANALYSIS," in the report he states:
   *"There is melted and resolidified metal in the area of the lamp holders.*
       *There is melted and resolidified copper on the wiring in the area of the*
       *switches that resulted from arcing. There is damage to the motor windings*
       *which lessens as distance increases from the laminated core. Insulation*
       *of wiring that is compromised and allows current to flow in unintended paths*
       *results in arcing. Arcing is a well known cause of fires. Motor windings*
       *increase in temperature when current flows through them. Increasing*
       *mechanical load due to circumstances including bearing failure can cause*
       *windings to overheat. Overheated motor windings can cause temperatures*

## Plick and Associates, Forensic Engineers

Charles E. Haddick, Jr., Esq.
Stephen and Michelle McKean
December 27, 2013
Page 5 of 6

> *to rise to the point of igniting nearby materials. Overheated or burning parts from a ceiling fan/light can ignite things they fall upon. The evidence of the ceiling fan/light is consistent with being the cause of a fire. The ceiling fan/light could not be ruled out as a cause of the fire".*

Mr. Ebersole acknowledges the damage to the motor windings lessened as distance increased from the laminated core of the windings. Thus, there would be less temperature at the outer portion of the windings. This, with an air gap as insulation between the windings and the housing of the motor, minimizes the temperature of the housing. Mr. Ebersole does not report any evidence of arcing or abnormal electrical activity on the housing of the motor.

Mr. Ebersole opines the melted copper windings are due to arcing as opposed to my opinion that it is due to the motor being engulfed in the fire on the coach. In either case, there is no evidence of high temperatures impacting the internal metallic components of the motor, such as the bearings. There is no evidence of arcing or abnormal electrical activity on the motor housing and there were no "nearby materials" to ignite.

Mr. Ebersole's report dated November 29, 2013 merely repeats the ceiling fan/light cannot be ruled out as a cause of the fire and the cause of the fire is undetermined.

Mr. Myers, in his report dated February 8, 2013 concluded:

> *After conducting a thorough and systematic examination of the fire scene, reviewing photos of Fire Investigator Thomas Jones, together with participating in the destructive examination of the fan/light and findings of Daryl Ebersole, P.E., it is the opinion of this investigator that the fire originated on the center sofa below the fan/light. According to Daryl Ebersole, electrical activity was found on the windings of the fan/light and no other physical evidence of arcing was found on the house wiring or on the fan/light which could be attributed to attack by fire. The fan/light cannot be ruled out as a possible ignition source which caused the*

**Plick and Associates, Forensic Engineers**

Charles E. Haddick, Jr., Esq.
Stephen and Michelle McKean
December 27, 2013
Page 6 of 6

> *fire. In addition, the effects of radiant heat cannot be ruled out as the cause of fire spread to the couch and chair in the living room. It is the opinion of this investigator that the cause of the fire is "undetermined.".*

Mr. Myers concluded the fire started in the subject couch, on which the fan/light had fallen. He also states, his depending on Mr. Ebersole's analysis, the fan/light cannot be ruled out as a possible ignition source which caused the fire.

**CONCLUSION**

Based on the results of my investigation and within a reasonable degree of engineering and scientific certainty, I have concluded the subject ceiling fan/light was not the cause of the fire. It is also my opinion the damages to the subject fan/light was the direct result of it being attacked by a fire already in progress.

This report is based on the information to date. Should additional information be provided, I reserve the right to modify, revise and/or supersede this report and its conclusions accordingly.

**EVIDENCE**

No evidence has been retained by Plick and Associates, Forensic Engineers.

Sincerely,
Plick and Associates, Forensic Engineers

*Sidney Rubin*

Sidney Rubin, P.E., C.F.E.I.
Consulting Engineer